UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JERRY HIGGINS**,

          Plaintiff,

  v.

**DAVID CLARKE, KEVIN NYKLEWICZ,
TROY MOORE-SPICER, JAMES RAMSEY,
DARREN REAVES, JULIE SHANAHAN, and
TRAVIS SYKES,**

          Defendants.

**Case No. 14-cv-760-pp**

---

**DECISION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. NO. 18) AND DISMISSING
COMPLAINT**

---

The *pro se* plaintiff, Jerry Higgins, is currently incarcerated at the Kettle Moraine Correctional Institution, although the events alleged in his complaint occurred while he was a pretrial detainee at the Milwaukee County Jail. On August 20, 2014, Judge William C. Griesbach (the judge assigned to the case at that time) issued an order allowing the plaintiff to proceed on claims that the defendants denied him adequate food, a clean mattress, and recreation time in violation of the United States Constitution. Dkt. No. 7. On April 30, 2015, the defendants filed a motion for summary judgment (Dkt. No. 18), which was fully briefed as of August 12, 2015 (Dkt. Nos. 20, 35, 36). For the reasons stated in this decision, the court grants the defendants' motion, and dismisses the case.

1

## I. FACTS[1]

### A. Parties

The plaintiff was a pretrial detainee at the Milwaukee County Jail (the "Jail") during the events alleged in his complaint. Dkt. No. 19 ¶¶2-3. He sued the following defendants: Milwaukee County Sheriff David Clarke (id. at ¶15); Deputy Inspector Kevin Nyklewicz (id. at ¶20); Lieutenant Julie Shanahan (id. at ¶26); and correctional officers James Ramsey-Guy, Travis Sykes, Troy Moore-Spicer[2], and Darren Reaves (id. at ¶¶46, 55, 63, 72).

### B. The Plaintiff's Allegations

The plaintiff states in his sworn complaint that from June 13, 2014, through June 24, 2014, the defendants locked him in his cell twenty-four hours a day and did not allow him to leave his cell, not even to eat or shower. Dkt. No. 1 at 3. As a result, he states that he lost eight pounds. Id. He also claims that his failure to shower caused him to scratch his body to the point of bleeding. Id. In addition, the plaintiff states that he had "a dirty & ripped mattress which cause[d] him to break out more." Id. at 5. Finally, he says

---

[1] The court takes the facts from the "Defendants' Proposed Findings of Fact in Support of Motion for Summary Judgment" (Dkt. No. 19); those facts are accepted as true for purposes of this decision because the plaintiff failed to respond to them. See Civil Local Rule 56(a)(1)(A) (E.D. Wis.). The court takes additional facts from the plaintiff's sworn complaint, which the Seventh Circuit has instructed district courts to construe as an affidavit at the summary judgment stage. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996). The facts are undisputed unless otherwise noted.

[2] The plaintiff sued "CO Moore" and "Co Spicer"; the defendants clarified that this is actually one person: CO Moore-Spicer. Dkt. No. 19 at 1. The plaintiff also sued "Deputy Inspector Laklaywick," Dkt. No. 1 at 1; the defendants clarified in their answer that this defendant's last name is "Nyklewicz." Dkt. No. 11 at 1.

"they" tried to feed him nutraloaf "some days" that was "sometimes cold or not completely cooked," and argues that "they" did this even though nutraloaf was banned from the House of Correction. Id.; Dkt. No. 35 at 2.

The plaintiff states that he filed grievances and complained to "numerous staff (such as CO Sykes, Moore, Ramsey, Reeves, Spicer, Lt. _____ [sic] Just to name a few) . . . ." Dkt. No. 1 at 3-4. He also states that "staff" wouldn't give him a new mattress even though they could see that the mattress was dirty and damaged. Id. at 5.

### C. The Defendants' Response to the Plaintiff's Allegations

The defendants state that the plaintiff never personally met with, or voiced any concerns about the conditions of his confinement to, Clarke or Nyklewicz. They assert that neither of those defendants made any decisions about the conditions of the plaintiff's confinement, including his use of recreation time, his diet, or the assignment of his mattress. Dkt. No. 19 at ¶¶ 17, 18, 24, 25. In addition, the defendants state that at no time did the plaintiff discuss his concerns about his diet, lack of recreation time, or mattress with Shanahan, Ramsey-Guy, Sykes, Moore-Spicer or Reaves. Id. at ¶¶ 35, 38, 49, 50, 51, 57, 58, 59, 66, 67, 71, 75, 76, 80. All of the defendants indicate that they did not become aware of the plaintiff's concerns until they received a copy of his complaint in September 2014. See id. at ¶¶37, 40, 49, 50, 51, 57, 58, 59, 66, 67, 75, 76.

The defendants explain that the plaintiff was confined at the Jail as a pretrial detainee from October 22, 2013, until August 4, 2014. Id. ¶81. Within

3

that time, the plaintiff was on disciplinary status (i.e., in segregation) from June 12, 2014 until July 9, 2014, due to his failure to follow Jail rules. Id. ¶82.

The cell in which the plaintiff stayed while on disciplinary status was approximately 13.5 feet x 6 feet x 7 feet, 10 inches high, and was equipped with a sink that provided hot and cold water. Id. ¶¶84, 85. Inmates on disciplinary status were allowed to keep toiletries, including bar soap and two towels, in their cells. Id. ¶¶95, 96. The Jail inspected inmate mattresses regularly, and they repaired or replaced any damaged or unsanitary mattresses. Id. ¶¶104, 105.

Inmates on disciplinary status were allowed one hour out of their cell per day for recreation time, although they could refuse this time if they so choose. Id. ¶¶86, 89. The Jail also had the discretion to restrict recreation time based on operational or safety concerns. Id. ¶88. During recreation, inmates could access showers that were located in the common area. Id. ¶87. If an inmate refused his recreation time, he waived his opportunity to shower on that day. Id. ¶¶86, 90. During the twelve-day period the plaintiff complains about, the defendants assert that he refused his recreation time on two occasions: June 14 and June 24, 2014. Id. ¶94.

The Jail feeds Nutraloaf to inmates on disciplinary status; the defendants indicate that Nutraloaf is similar in texture to meatloaf. The inmates receive the Nutraloaf three times per day, except on Sundays, when inmates receive the same food trays as the inmates in the general population. Id. ¶¶99-100.

4

According to defendants, Nuraloaf has been deemed to meet all nutritional requirements. Id. ¶103.

**II. DISCUSSION**

    A.    <u>Summary Judgment Standard</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Ames v. Home Depot U.S.A., Inc.</u>, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." <u>Anderson</u>, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

5

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### B. The Standard for Proving Deliberate Indifference

The Constitution[3] imposes duties on prison officials to provide humane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). To succeed on a conditions of confinement claim, a plaintiff must show that an official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both [have] be[en] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." Del Raine v. Williford, 32 F.3d 1024, 1032 (7th Cir. 1994). Deliberate indifference requires "more than an ordinary lack of due care for the prisoner's interests or safety." Whitely v. Albers, 475 U.S. 31, 319 (1986). "Failure by prison officials to respond to complaints about cell conditions can demonstrate deliberate indifference." Flores v. O'Donnell, 36 Fed. Appx. 204, 207 (7th Cir. 2002) (citations omitted).

### C. Claims Against Individual Defendants

1. *The Plaintiff Has Failed to Allege Personal Involvement on the Part of Five Defendants.*

The Seventh Circuit Court of Appeals has repeatedly explained that a plaintiff may bring a §1983 claim only against those individuals who are

---

[3] The Fourteenth Amendment is the basis of a pretrial detainee's conditions of confinement claim; however, courts look to Eighth Amendment case law because the Fourteenth Amendment's protections are "at least as broad as those that the Eighth Amendment affords" and "the Supreme Court has not yet determined just how much additional protection the Fourteenth Amendment gives to pretrial detainees." Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 664 (7th Cir. 2012).

personally responsible for a constitutional deprivation. See Doyle v. Camelot Care Cntrs, Inc., 305 F.3d 603, 614-15 (7th Cir. 2002). This also means that, under §1983, a plaintiff may not rely on the doctrine of *respondeat superior* to hold supervisors liable for the misconduct of subordinates. See id. Rather, in order to be held liable under §1983, supervisors must have had some personal involvement in the constitutional deprivation, such as directing, or consenting to, the challenged conduct. See Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001).

In the complaint, the plaintiff indicated that he "talked to numerous staff (such as CO Sykes . . . [and] Ramsey . . ." during the period described in the complaint. Dkt. No. 1 at 4. In support of the defendants' motion for summary judgment, defendants Clarke (Dkt. No. 23), Nyklewicz (Dkt. No. 24), Shanahan (Dkt. No. 28), Ramsey-Guy (Dkt. No. 26) and Sykes (Dkt. No. 29) filed affidavits stating that they were not personally involved in any of the decisions relating to the conditions of the plaintiff's confinement from June 13, 2014, until June 24, 2014 (the time the plaintiff complains about in his complaint).

Specifically, Clarke, the Milwaukee County Sheriff, states that he is not involved in the day-to-day operational decision-making at the Jail, and that he made no decisions with regard to the plaintiff's conditions of confinement. Dkt. No. 23 at 2. Nyklewicz, a Deputy Inspector in the Milwaukee County Sheriff's Department, states that while he supervises the day-to-day operations of the Jail, he never met the plaintiff, never had conversations with him regarding the conditions of his confinement, and was not involved in any decisions regarding

the conditions of his confinement. Dkt. No. 24 at 1-2. Shanahan, a Corrections Lieutenant for the Sheriff's Department, has no recollection of interacting with the plaintiff in June 2014 (or at any other time), sees no reference to him in her daybook (where she documents inmate grievances), and was not alerted to any issues concerning the plaintiff's confinement. Dkt. No. 28 at 2-3. Corrections Officer Ramsey-Guy indicates that he does not recall interacting with the plaintiff during the relevant time period, and that the plaintiff did not ever discuss his confinement concerns with Ramsey-Guy. Dkt. No. 26 at 2. Finally, Corrections Officer Sykes indicates that the plaintiff never discussed any of the concerns he raised in the complaint with Sykes. Dkt. No. 29 at 2.

The plaintiff does not rebut these statements; in fact he concedes that defendant Clarke had no contact with him. Dkt. No. 35 at 1. He states only that Clarke "is responsible for all of the defendant[s]." Id. at 1. With regard to Deputy Inspector Nyklewicz, the plaintiff responded only that the Jail "is required by law to maintain a log sheet of daily activity and do 30 minute rounds," and thus that all of the defendants were deliberately indifferent in alleging that they did not know of his complaints. Id. at 2. The plaintiff makes no response regarding defendant Ramsey-Guy. With regard to Shanahan, he simply argues that he filed a number of complaints, and if certain staff didn't talk with him or interact with him about those complaints, "it indicates that his complaints were intentionally overlooked by the defendant's." Id. Similarly, he argues that Sykes' allegation that he did not interact with the plaintiff "strongly indicat[es] that the plaintiff's complaints were ignored." Id. Finally, the plaintiff

makes the general assertions that the Jail "is required by law to maintain a log sheet of daily activity and do 30 minute rounds," and that "the plaintiff filed several complaints." Dkt. No. 35 at 2.

The plaintiff's claims as to these five defendants amount to this: he argues that he made complaints to *someone*; that in response to these complaints, *someone* should've gotten in contact with him; and the fact (according to the plaintiff) that nothing was ever done about the complaints he made somehow shows that *these* defendants were responsible for making decisions about the plaintiff's use of recreation time, his diet, or his assignment to the cell with the allegedly damaged mattress. The plaintiff's complaint is simply that, when an inmate makes complaints regarding the conditions of his confinement, someone ought to get in touch with that inmate, and that if no one does, that shows that specific defendants violated that inmate's constitutional rights. These allegations are not sufficient to support claims against these five defendants, and the court will dismiss the plaintiff's claims against Clarke, Nyklewicz, Shanahan, Ramsey-Guy and Sykes.

> 2. *The Plaintiff Has Failed to Submit Sufficient Evidence to Indicate a Genuine Issue of Material Fact as to the Remaining Two Defendants.*

The defendants argue that the two remaining named defendants—Corrections Officer Moore-Spicer and Corrections Officer Reaves—are the only two defendants who even worked in the plaintiff's pod (Pod 4B) for more than one day during the time frame alleged in the complaint. Dkt. No. 20 at 20. Moore-Spicer was assigned to the plaintiff's housing unit for five of the twelve

9

days about which the plaintiff complains, and Reaves was assigned to the plaintiff's housing unit for four of the twelve days. Dkt. No. 19 at ¶¶65, 74.

Again, however, while these two defendants are the only two who had the opportunity to hear the plaintiff's complaints directly, they have provided evidence that they did not. All of the defendants (including Moore-Spicer and Reaves) state in their sworn affidavits that the plaintiff never complained to them about his weight loss, about any harm he was suffering because of the food, about his mattress, about his health, or about his hygiene. See id. at ¶¶17, 24, 35, 38, 49, 50, 51, 57, 58, 59, 66, 67, 75 and 76. All of the defendants (including Moore-Spicer and Reaves) assert that they were not aware that the plaintiff had any such concerns until they received a copy of the plaintiff's complaint in September 2014. See id.

And, although these two defendants were the only two who had the opportunity to hear the plaintiff's complaints directly from the plaintiff, even he does not argue—and certainly does not produce evidence—that he complained to them. Once again, the plaintiff does not rebut the facts attested in the defendants' affidavits. In his complaint, he vaguely referenced speaking to "numerous staff"; however, the defendants deny under penalty of perjury that he spoke to any of them. In response to the defendants' motion and affidavits, the plaintiff insists only that he made "several complaints" (Dkt. No. 35 at 2-3), but he never states that he made those complaints *to these defendants*. In fact, the plaintiff does not provide a single detail about direct contact with anyone. Instead, he argues that the defendants' failure to make contact with him proves

10

that they were ignoring his requests. Dkt. No. 35 at 1-3. This argument assumes too much; the plaintiff provides no factual basis for inferring that the defendants ever knew about his concerns or complaints. Without knowing about his concerns and complaints, they had no reason or obligation to reach out to the plaintiff. In other words, the defendants cannot be held liable for ignoring complaints that they never knew about in the first place.

A party responding to a summary judgment motion must present specific evidence that there is a genuine dispute regarding the material facts of the case. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Seventh Circuit has repeatedly stated that summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." See, e.g., Springer v. Durfilnger, 518 F.3d 479, 484 (7th Cir. 2008) (citations omitted).

Because the plaintiff has not asserted that any of the named defendants heard his complaints about Nutraloaf, heard his complaints about his mattress, refused to allow him to shower, or refused to allow him to take recreation time, the court dismisses the plaintiff's claims.[4]

### III. CONCLUSION

The court **ORDERS** that the defendants' motion for summary judgment (Dkt. No. 18) is **GRANTED**.

---

[4] The defendants make other arguments about the nutritional value of Nutraloaf, about the impact of the qualified immunity doctrine on the plaintiff's claim, about the merits of the plaintiff's claim that he was denied recreation time and showers. The court does not need to reach these arguments, given that the plaintiff has failed to allege specific claims against any of the seven defendants.

11

The court **ORDERS** that this case is **DISMISSED**.

The court **ORDERS** that the clerk of court shall enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 19th day of February, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge